JOHN SCHWENNISKI, ET AL., *vs.* JOHN GLENN, P. T. OF ANNE WATSON.—*June* 1846.

*W.* died intestate, possessed of certain leasehold property, leaving a widow and children. The widow administered on his estate.—Engaging in trade she became indebted; mortgaged said property to an endorser on her own notes, which she paid away for her husband's debts, and immediately applied for relief under the insolvent laws. After this, she proceeded to collect the rents. Upon a bill filed by her permanent trustee, to vacate the mortgage and enjoin her from the collection of the rents, HELD : that as the estate of *W.* had not been distributed, as it appeared some of his debts were yet unpaid, the administratrix still held the property in that character, bound to rent it, and account for the rents as a part of *W's* estate.

The permanent trustee might cite the administratrix before the orphans court to settle the estate, and upon its distribution might claim the widow's interest.

Where a bill upon which an injunction had been granted, was removed from the county court to the court of chancery, and the chancellor refused to revise, alter, or reverse the order for the writ, on a motion to dissolve, because he could not interfere with the prior action of the other court, upon appeal, such order was reversed, and the injunction dissolved.

APPEAL from the Court of Chancery.

On the 30th July 1845, the appellee filed a bill on the equity side of *Baltimore* county court, alleging, that a certain *Anne Watson* being largely indebted to various persons, and being altogether and hopelessly insolvent, did, on or about the 11th July 1843, execute unto her son, a certain *Hugh McNeal,* for an ostensible consideration of $404, a deed of a certain house or store, and lot, on *Pratt* street, &c.; that after the said deed had been put upon record, the said *Anne Watson* did proceed to expend upon the said house, so as aforesaid conveyed by her, repairs exceeding the sum of, &c.; that a short time afterwards, and while the repairs last mentioned were being put upon the house aforesaid, the said *A. W.,* on or about the 22nd August, in the same year, did execute unto her said son, *Hugh McNeal,* a certain other deed or bill of sale, whereby, for an ostensible consideration of $8750, she did convey unto the said *H. McN.,* all the stock in trade and furniture of her, the said *Anne W.,* of all sorts and descriptions, as will appear by a certified copy of said bill of sale, &c.; that the said *H.*

*McN.*, at the time of the conveyance to him as aforesaid, was a young man, deriving from his trade, as an iron worker, but a moderate and mere subsistence, and utterly without pecuniary means; and that the said *H.* could not, and did not, pay, and has not paid to the said *A. W.*, the said sums of money, or either of them, or any part of either of them, as set forth as the consideration of the said deeds, but that the said deeds were, and each of them was made and executed by the said *A. W.*, fraudulently, and with the intent and purpose to delay, hinder and defraud the creditors of the said *A. W.*, of their just and lawful debts and actions, and to disturb, delay, hinder and defraud the said creditors, and to conceal, sell, convey, lessen and dispose of the property and rights of the said *A. W.*, thereby to deceive and defraud her said creditors, and to secure her said property and rights, to receive and expect for herself, the said *A. W.*, profits, benefits and advantages thereby; and your orator further charges, that notwithstanding the said conveyances, said *H. McN.* did permit the said *A. W.* to continue in the house aforesaid, and to occupy the same as a store, precisely as she had occupied it previously to the first conveyance aforesaid, without the payment of any rent whatsoever; and your orator charges moreover, that the said *Hugh* did likewise permit the said *Anne* to retain possession of the goods, merchandise and furniture, by the bill aforesaid to him conveyed, and to use and dispose of the same at her pleasure, and to take, receive and enjoy the profits thereof, as if the said bill of sale had not been made, to the great injury and wrong of the creditors aforesaid, and in furtherance and consummation of the frauds, wherefore said deed and said bill of sale were executed, as has been alleged; that continuing indebted and insolvent as aforesaid, and deriving her maintenance chiefly from and through the frauds aforesaid, having, on or about the 20th December 1844, given her four promissory notes, (as by the instrument hereinafter referred to will appear,) with a certain *Joseph D. Worley*, as her security to *Thomas Flint & Co.*, for a debt due to the said firm by her deceased husband, whose administratrix she was, for which debt she was in nowise personally liable, having in no way wasted the estate of her said

husband ; knowing moreover the said *Anne*, that she should, and was about to apply for the benefit of the insolvent laws of *Maryland*, which she did but two days afterwards; she, the said *A. W.*, on the 20th March 1845, for the purpose of further carrying out the frauds aforesaid, executed and delivered unto the said *Worley*, a deed of mortgage of all the remaining property of her, the said *Anne*, to wit : her interest in the estate of her deceased husband, *Donald Watson*, for the ostensible purpose of securing the said *Worley* against loss upon the promissory notes aforesaid, and two other notes, which are referred to in said mortgage, though the amount thereof is not therein stated ; that the said *Worley*, at the time when he became surety upon the notes in said mortgage referred to, was in possession of the house and lot aforesaid, on *Pratt* street, fraudulently, as aforesaid, conveyed to *Hugh McNeal*, and it was agreed by and between the said parties, that he should be indemnified from the rents of said house and lot, against loss by his said suretyship ; and your orator charges, that by means of said rents, said *Worley* has been so indemnified, and that some of said notes, or all of them, without loss of said *Worley*, have been paid, and that said *Worley*, therefore, has continued in possession of said house and lot, and has received the rents, profits and advantage thereof.   Now, therefore, your orator avers and charges, that the said mortgage was fraudulently made and executed by the said *Anne Watson* to said *Worley*, with intent and purpose to hinder and defraud the creditors of said *Anne Watson*, of their just and lawful debts and actions, and to disturb, hinder and defraud the said creditors, and to lessen, dispose of, and convey the property, right and claims of the said *Anne Watson*, thereby to deceive and defraud her said creditors, and to secure the said property, rights and claims, to receive and expect profit and advantage thereby, and with a view and under an expectation of being and becoming an insolvent debtor, and with an intent thereby to give an undue and improper preference, and that the said mortgage, moreover, is defectively and insufficiently executed; that afterwards, about the 22nd of March 1845, two days only after the date of the deed of mortgage aforesaid, said *Anne Watson* petitioned for the benefit of the

insolvent laws, and your orator was duly appointed her permanent trustee, and gave bond as such, according to law ; wherefore your orator says, that the deeds aforesaid are, and each of them is, utterly null and void, and that the property thereby pretended to be conveyed, of right belongs to your orator, for the benefit of the creditors of said *A. W.;* and your orator alleges, that the property, by said last mentioned mortgages, pretended to be conveyed, consists of the interest of said *Anne Watson*, as widow of *Donald Watson*, in certain leasehold premises on *Marsh Market* space, in the city of *Baltimore*, now, and, for some time past, rented to a certain *Henry Fay* and *Albert Meteer*, from whom your orator is entitled to receive the share of the rents and profits to which said *Worley*, by said mortgage, pretends to have claimed, but who continue to pay the same to said *A. W.*, and not to your orator.

The bill then prayed for a discovery by *H. McN.* and *J. D. W.*, an account of rents, profits and sales ; deeds to be decreed void ; *subpœna*, and for general relief.

With this bill were exhibited the several conveyances mentioned in it.

Afterwards the complainants filed their petition, charging, that the said *Anne*, and a certain *John Schwenniski*, with whom she hath, since said bill was filed, intermarried, having notice of said bill, and with intent to interfere with the authority of this court, and to thwart your petitioner in the relief which he had prayed, did, on the 4th October 1845, cause to be issued, or did issue a warrant of distress, directed to, &c., commanding him to distrain the goods of, &c., for part of the said rents, which he accordingly did, and do now intend, and are about so to proceed against the goods and chattels of, &c., when the rent next to become due from him shall accrue, notwithstanding the pendency of the proceedings aforesaid, in contempt of this court and its jurisdiction, already accrued, and to the interruption of your petitioner, and the relief by him prayed. Prayer, that the said *J. S. and wife*, may be attached to answer to this court of the contempt aforesaid, and that your honors will cause to be issued the writ of injunction, to the said *J. S.* and *Anne S.* directed, enjoining and restraining them, and

each of them, and their, and every of their servants, bailiffs or agents, and all other persons whatsoever from meddling with the rents of the share of said property, by your petitioner claimed in his said bill, and from interfering with the same in any manner whatsoever, &c.

Upon this petition, (ARCHER, C. J.,) on the 7th October 1845, ordered, that injunction issue as prayed, to operate during the pendency of the suit of the complainant, upon the petitioners executing a bond, with security, to be approved by one of the judges of this court, in the penal sum of, &c., conditioned to indemnify the defendants herein.

The defendants, *H. McN.* and *J. D. W.*, answered the bill, but their answers are deemed unnecessary to be stated upon the appeal from the injunction, granted upon the petition of the complainants.

The answer of *J. Schwenniski and wife*, to the said petition, alleged, that by the bill of complaint of said *John Glenn*, referred to in his said petition, it is shewn, that this respondent, *Anne*, was, at the time of filing said bill of complaint, and these respondents aver that she still is, administratrix of all the goods, &c., which belonged to *Donald Watson* in his lifetime, and as such administratrix, these respondents charge, that she now has, and had at the time of filing the said bill and petition of *John Glenn*, a perfect legal right to sue for, demand, and receive the rents coming due on the property situated on *Frederick* street and *Marsh Market* space, as described in the petition of said *John Glenn*, inasmuch as the said property was leasehold estate, held by said *D. W.* at the time of his death, all of which these respondents offer themselves ready to prove, if denied by said *John Glenn*. And these respondents further answer and say, that the said administration on the estate of said *D. W.*, is not yet fully settled up, and that no distribution has ever been made between the children of said *D. W.* and this respondent, *Anne*, his widow, in respect to said leasehold property. That the said *J. G.* had not been duly appointed permanent trustee of *A.*, who denied the frauds alleged against her, &c.

The cause, upon the suggestion of the defendants, was then removed to the court of chancery, where exceptions were taken to the answers.

It was then agreed, that the rents covered by the injunction, issued from leasehold estate belonging to *Donald Watson,* in his lifetime; and the proceedings of the insolvent commissioners of *Anne Watson,* for relief under the insolvent law, were filed in the cause. She made her application on the 22nd March 1845, and the complainant bonded as her permanent trustee on the 7th May 1845.

On the 21st January 1846, the chancellor, (BLAND,) ordered, "that as this court cannot revise, alter or reverse any judgment of the court, from which the case has been brought, that the order of the 7th October 1845, (which granted the injunction,) stand and remain in full force, according to its terms," from which order the defendants appealed to this court.

The cause was argued before DORSEY, CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By HORSEY for the appellants, and
By GLENN for the appellee.

MAGRUDER, J. delivered the opinion of this court.

The injunction in this case was granted, to prevent *John Schwenniski* and his wife, from collecting rents due for a house and lot, which had been mortgaged by the latter to the appellant, *Joseph D. Worley,.* The mortgage is alleged to be fraudulent as against creditors, and the bill of complaint is filed by the appellee, who is the permanent trustee of the wife, she having applied for the benefit of the insolvent law. It appears, however, that in this property the former husband of the wife of the first named appellant had a leasehold interest; that he died intestate, and his widow administered upon his estate.

It is nowhere alleged, and the administratrix expressly denies, that the estate has been distributed; and it would seem, that some of the debts due from the deceased are yet unpaid. The administratrix, then, still holds the property in that cha-

racter, and in that character is bound to rent it, and collect the rents, and account for them, as a part of the estate of her husband.

It may be that the administration ought some time ago to have been closed, and the widow's interest in it ascertained. But this the bill, taken in connection with the answer, will not authorise this court to presume. Until this distribution is made, the court cannot say that the appellee, as permanent trustee, has any title to this portion of the intestate's estate; and it is in his power at any time to apply to the orphans court, for a distribution of it among the widow and her children; one of whom is made a party to the bill of complaint.

Order of chancellor, continuing the injunction, reversed, and the injunction dissolved.     ORDER REVERSED.